## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PEDRO VINENT,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:02-1639** |
| | : | **(VANASKIE, C.J.)** |
| **v.** | : | **(MANNION, M.J.)** |
| **D.S. DODRILL, Warden; RUSSELL** | : | |
| **GILL; C.O. REESE; LT. G.W.** | | |
| **MCKINNEY; ASSOCIATE** | : | |
| **WARDEN S. HOBART; and** | | |
| **MR. WHITE,** | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

Pending before the court is the defendants' motion for summary judgment. (Doc. No. 38). Based upon the court's review of the record in the instant action, it is recommended that the defendants' motion be granted.

## I.  PROCEDURAL HISTORY

On September 16, 2002, the plaintiff, a former inmate at the United States Penitentiary, Lewisburg, Pennsylvania[1], filed the instant action as a petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2241, and the Clerk's office designated it as such. (Doc. No. 1). Upon review of the plaintiff's filing, the court found that the plaintiff was not challenging the fact or duration of his confinement, which would be the proper basis for a habeas

---

[1]The plaintiff has since been released from confinement and is residing at 9599 Cupine Avenue, Orlando, Florida 32824. (See Doc. No. 43)

corpus petition, but was only challenging the conditions of his confinement. As such, by order dated October 1, 2002, the court directed that the Clerk's office correct the docket to reflect that the instant action was being construed as a civil rights action brought pursuant to 28 U.S.C. § 1331.

On October 10, 2002, the plaintiff returned a completed application to proceed in forma pauperis and authorization form. (Doc. Nos. 4 & 5). As such, a financial administrative order was issued. (Doc. No. 6).

By order dated October 24, 2002, the plaintiff was, *inter alia*, given an opportunity to amend his complaint to meet the pleading requirements for a civil rights action. (Doc. No. 7).  The plaintiff ultimately filed his amended complaint on November 22, 2002[2].  (Doc. No. 9).

After having been granted enlargements of time to do so, (Doc. Nos. 31, 37), on November 19, 2004, the defendants filed the instant motion for summary judgment. (Doc. No. 38).  A supporting brief and documentation followed on December 6, 2004. (Doc. Nos. 39 & 40).  On December 28, 2004, the plaintiff filed a brief in opposition to the defendants' motion for summary judgment. (Doc. No. 41).  The defendants filed a reply brief on

---

[2]The court notes that one day prior to the plaintiff's filing of his amended complaint, the court issued a report recommending dismissal of the action for the plaintiff's failure to comply with the order of October 24, 2002.  (Doc. No. 8). Because the amended complaint was received one day after the filing of the report and the amended compliant suggested that it may have been mailed to the court within the appropriate time frame, by order dated December 4, 2002, the district court judge remanded the matter to the undersigned.  (Doc. No. 13).

January 10, 2005. (Doc. No. 42).

## II.  STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56©).

The Supreme Court has stated that:

> ". . . [T]he plain language of Rule 56©) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. Id.  The moving party can discharge that burden by "showing . . . that there is an absence of evidence

3

to support the nonmoving party's case." Id. at 325.

Issues of fact are genuine "only if a reasonably jury, considering the evidence presented, could find for the nonmoving party." Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988)(citations omitted).  Material facts are those which will effect the outcome of the trial under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The court may not weigh the evidence or make credibility determinations.  Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998).  In determining whether an issue of material fact exists, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the nonmoving party. Id. at 393.

If the moving party meets his initial burden, the opposing party must do more than raise some metaphysical doubt as to material facts, but must show sufficient evidence to support a jury verdict in its favor.  Id.

## III. DISCUSSION

The plaintiff alleges in his amended complaint that he was improperly placed in the Segregated Housing Unit, ("SHU"), at USP-Lewisburg because of his immigration status.  While there, the plaintiff alleges that he was physically and verbally assaulted by correctional officers, after which he was denied medical treatment for his injuries.  In addition, the plaintiff alleges that he was improperly transferred to a supermaxium facility without due process.

4

The plaintiff is seeking compensatory and punitive damages in the amount of $240,000 based upon his allegations. (Doc. No. 9).

In response to the plaintiff's amended complaint, the defendants have submitted a statement of material facts supported by various documents which establishes that, in the ordinary course of business, computerized indices of all administrative requests and appeals filed by inmates are maintained in the Bureau of Prisons' computerized database so that rapid verification may be made as to whether an inmate has exhausted the administrative remedy process. (Doc. No. 40, ¶ 1; Ex. 1).

A review of the plaintiff's administrative remedy log establishes that he has filed a total of fifty-four (54) administrative requests. (Doc. No. 40, ¶ 2; Ex. 1, pp. 3-30).   Of these fifty-four (54) requests, only four (4) relate to incidents which occurred at FCI-Lewisburg. (Doc. No. 40, ¶ 3; Ex. 1, pp. 5-7).

The plaintiff's first administrative request was received on October 11, 2001.  This request challenged procedures at a Disciplinary Hearing Officer, ("DHO"), hearing on March 12, 2002.  (Doc. No. 40, ¶¶ 4-5; Ex. 1, p. 5).  The request was rejected because it was filed at the wrong level.  Specifically, the plaintiff filed his request at the institutional level, when appeals from DHO hearings are to be filed directly at the regional level. (Doc. No. 40, ¶¶ 5-6; Ex. 1, p. 5).  The plaintiff was notified of the reason that his request was being rejected and was given additional time to file the request at the appropriate level.  Although the plaintiff resubmitted his request, he failed to do so in a

timely manner. (Doc. No. 40, ¶¶ 7-8; Ex. 1, p. 6).  As a result, his request was denied as untimely. (Id.).  The plaintiff did not appeal this decision.  (Doc. No. 40, ¶ 10; Ex. 1, pp. 6-30).

The plaintiff filed his second administrative request on March 25, 2002, in which he complained about staff and the administrative remedy procedures. (Doc. No. 40, ¶¶ 11-12; Ex. 1, p. 6).  This request was filed directly at the regional level and was rejected as being filed at the wrong level. (Doc. No. 40, ¶ 13).  Again, the plaintiff was informed of the rejection and afforded an opportunity to resubmit the request at the appropriate level. (Doc. No. 40, ¶ 14).  The plaintiff failed to do so. (Id.).

On April 1, 2002, the plaintiff filed another administrative request concerning his DHO hearing on March 12, 2002. (Doc. No. 40, ¶ 15; Ex. 1, p. 7).  Although the plaintiff filed this request at the appropriate level, the request was rejected because the plaintiff had an improper number of continuation pages attached. (Doc. No. 40, ¶ 16).  The plaintiff was, once again, given the opportunity to resubmit his administrative request with the appropriate number of continuation pages.  The plaintiff failed to do so. (Doc. No. 40, ¶ 17; Ex. 1, pp. 7-30).

The final administrative remedy request filed by the plaintiff was on June 17, 2002, in which the plaintiff again challenged the DHO hearing decision.  (Doc. No. 40, ¶ 19).  Again, the request was rejected for having been filed at the wrong level, as the plaintiff had filed the request at the

institutional level and it was required to be filed directly at the regional level. (Doc. No. 40, ¶ 20).

Based upon the foregoing, the defendants argue that the plaintiff's complaint should be dismissed for his failure to exhaust his administrative remedies pursuant to 28 C.F.R. § 542 prior to initiating the instant action. (Doc. No. 39).

The United States Supreme Court has set forth the following with respect to the exhaustion of administrative remedies by prisoners prior to initiating civil rights actions in federal court:

> Previously, plaintiffs pursuing civil rights claims under 42 U.S.C. § 1983 need not have exhausted administrative remedies before filing suit in court. See Patsy v. Board of Regents of Fla., 457 U.S. 496, 516 (1982). Prisoner suits alleging constitutional deprivations while incarcerated once fell within this general rule. See Wilwording v. Swenson, 404 U.S. 249, 251 (1971).
>
> In 1980, however, Congress introduced an exhaustion prescription for suits initiated by state prisoners. See Civil Rights of Institutionalized Persons Act, 94 Stat. 352, as amended, 42 U.S.C. §1997e (1994 ed.). This measure authorized district courts to stay a state prisoner's §1983 action for a period of not to exceed 180 days while the prisoner exhausted available "plain, speedy, and effective administrative remedies." §1997e(a)(1). Exhaustion under the 1980 prescription was in large part discretionary; it could be ordered only if the State's prison grievance system met specified federal standards, and even then, only if, in the particular case, the court believed the requirement "appropriate and in the interests of justice." §§1997e(a), (b). This was described as a "limited exhaustion requirement" in McCarthy v. Madigan, 503 U.S. 140, 150-151

7

(1992), and was considered inapplicable to prisoner suits for damages when monetary relief was unavailable through the prison grievance system.

In 1996, as part of the PLRA, Congress invigorated the exhaustion prescription.  The revised exhaustion provision provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §§ 1997e(a) (1994 ed., Supp. V).

The current exhaustion provision differs markedly from its predecessor.  Once within the discretion of the district court, exhaustion in cases covered by §1997e(a) is now mandatory.  See Booth v. Churner, 532 U.S. 731, 739 (2001).  All "available" remedies must now be exhausted; those remedies need not meet federal standards, nor must they be "plain, speedy, and effective.  Id., at 740, n. 5.  Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. Id., at 741.  And unlike the previous provision, which encompassed only §1983 suits, exhaustion is now required for all "action[s] . . . brought with respect to prison conditions," whether under §1983 or "any other Federal law."  Thus, federal prisoners suing under Bivens must first exhaust inmate grievance procedures just as state prisoners must exhaust administrative processes prior to instituting a §1983 suit.

Congress enacted §1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation.  Booth, 532 U.S. at 737.  In other instances, the internal review might "filter out some frivolous claims."  Id.  And for cases

8

> ultimately brought to court, adjudication could be
> facilitated by an administrative record that clarifies
> the contours of the controversy. Id. See also
> Madigan, 503 U.S. at 146.

Porter v. Nussle, 534 U.S. 516, 523-525 (2002).

With respect to the instant action, it is clear from the materials submitted by the defendants that the plaintiff has failed to exhaust his administrative remedies pursuant to 28 C.F.R. § 542 with respect to the claims which he now attempts to raise.  In his brief in opposition to the defendants's motion for summary judgment, the plaintiff does not dispute this, but argues that he did not do so because administrative remedies were not available to him.  To this extent, the plaintiff argues that he has a limited understanding of the English language and that prison officials in the SHU would not assist him in exhausting his administrative remedies[3].  Despite the plaintiff's claims, the defendants' materials indicate that on each occasion that the plaintiff's administrative remedy requests were rejected, the plaintiff was informed of the basis of the rejection and given an opportunity to cure the defect.  The plaintiff failed on each occasion to either cure the defect or to do so in a timely manner.  Thus, the instant action should be dismissed for the plaintiff's failure to exhaust administrative remedies prior to initiating the

---

[3]The court notes that the plaintiff has been more than capable in pursuing the instant action, and additionally he had sufficient understanding to file some 50 other administrative requests challenging previous matters while incarcerated. (Doc. No. 40, ¶ 3, Ex. 1, pp. 5-7)

9

instant action.

The court notes that, while dismissal for failure to exhaust administrative remedies was previously without prejudice, in order to give the plaintiff an opportunity to exhaust his remedies and re-file his suit at a later date, the Third Circuit has recently adopted a procedural default interpretation of § 1997e(a). To this extent, the court found that an inmate's failure to properly exhaust any administrative remedies could bar a suit in federal court. Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). This would include those circumstances in which the inmate's opportunity to file a grievance has expired. When a grievance cannot be considered because it is filed too late, exhaustion is no longer possible. It is clear from the defendants' materials that the time has long passed for the plaintiff to file a grievance with respect to the claims which he now attempts to raise, and he can no longer exhaust his remedies with respect to those claims. As such, he has procedurally defaulted, and his complaint should be dismissed with prejudice. See Robinson v. United States, 80 Fed. Appx. 494 (7th Cir. 2003)(Citations omitted).

## IV.  CONCLUSION

On the basis of the foregoing, it is recommended that the defendants' motion for summary judgment, **(Doc. No. 38)**, be **GRANTED**.

**s/ Malachy E. Mannion**
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Dated:** August 12, 2005

O:\shared\REPORTS\2002 Reports\02-1639.1.wpd

11